Charles W. Speidel v. Commissioner.
Charles W. Speidel v. Commissioner
Docket No. 23159.
United States Tax Court
1952 Tax Ct. Memo LEXIS 28; 11 T.C.M. (CCH) 1144; T.C.M. (RIA) 52336; November 26, 1952
*28 Held, on the facts, that a valid partnership, for income tax purposes, did not exist between petitioner and his son Leonard during the period from January 1, 1944 to April 9, 1945, but that such a partnership did exist on and after April 9, 1945. J. Harry LaBrum, Esq., 1507 Packard Bldg., Philadelphia, Pa., and Lewis Weinstock, Esq., for the petitioner. Edward Pesin, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent has determined deficiencies in individual income taxes for the calendar years 1944 and 1945 in the amounts *29 of $11,580.72 and $29,462.91, respectively. The proceeding was submitted on a stipulation of facts which are so found, together with oral testimony and documentary evidence introduced at the hearing. Certain of the issues have been settled by stipulation, leaving for our consideration the one issue of whether or not petitioner's son, Leonard R. Speidel, was a bona fide partner during the years 1944 and 1945 in the business conducted in the name of Charles W. Speidel & Company. Findings of Fact The petitioner is an individual residing at 135 Penn Boulevard, East Lansdowne, Pennsylvania. His income tax returns for the calendar years 1944 and 1945 were filed with the collector of internal revenue at Philadelphia, Pennsylvania. In November 1933 the petitioner, Charles W. Speidel, and one Walter A. Kohn entered into a partnership trading as Charles W. Speidel & Company, in which Speidel and Kohn each had a fifty per cent interest. This partnership business was for the manufacturing and sensitizing of print papers and tracing papers and the selling of drafting materials, equipment and supplies and other materials related thereto. Kohn's duties in the partnership were confined to management *30 of the office and financial affairs of the business. Petitioner had responsibility for purchases, sales, processing, and operation of the factory. The petitioner had two sons, Carl, born in 1916, and Leonard R. Speidel, born in 1919, both of whom were in school at the time of the organization of the aforesaid partnership. From the time of the organization of this partnership the petitioner planned to train his two sons in order that they might in time take over shares in the partnership business, and from the time the business was organized up until 1936 they were employed during their spare time from their school duties in doing work for the business calculated to train them ultimately in its operation. During 1936 Walter A. Kohn, petitioner's partner, had a heart attack, following which he was able to render but little service. Prior to this time the partnership had employed one William Hermann on a part time basis to assist Kohn in the office work, but following the latter's illness Hermann was employed at full time for this purpose. As a result of Kohn's illness and the condition this brought about, petitioner's son Leonard left high school and became employed on a full time *31 basis by the partnership, progressing in his work through the factory until he was familiar with the operation of all machines and processes. Some of the chemicals used in the manufacture were prepared under secret formulae known only to petitioner and these were imparted to Leonard, who assisted his father in the preparation of these chemicals. By 1941 Leonard was familiar with the operation of the manufacturing end of the business and was his father's assistant in its management. Petitioner's older son, Carl, remained in school one year longer than his brother, as he was attending Drexel Institute taking a course in business management to prepare him for the duties he was intended to take over in handling matters of finance and selling. At the conclusion of this additional year in school Carl went into the business, devoting his full time thereto and being put in charge of the Baltimore office of the business and the sales in the Baltimore territory. Petitioner's son Leonard, upon being brought into the business on a full time basis, was paid at the rate of $10 per week. This was raised to $11 per week on January 1, 1937, and increased slowly through the years until in January *32 1941 he was receiving $16 per week. These payments were less in amount than those ordinarily made for services of the character rendered by Leonard. During all of the time that petitioner's sons were employed in the business it was fully understood that upon Kohn's retirement from the firm they would receive partnership interests. It was because of this understanding and assurance that Leonard was willing to perform full time service at pay disproportionate to its value to the business. Petitioner's two sons entered the Army in 1941, and, as a result of the condition thus brought about in the business, Kohn postponed his retirement from the firm and continued performing such service as his limited physical ability would permit. At the time petitioner's two sons entered the service it was thought that it would be for a period of only one year, at the end of which time they would return and resume their work. However, Pearl Harbor intervened and they were continued in active service. Carl was killed in action in Italy in 1943. He was reported as missing July 20, 1943, the bomber on which he was a co-pilot having crashed into an enemy hangar. His death was officially declared by the *33 War Department as of July 21, 1944. Petitioner's son Leonard was injured in a tank accident while in the military service in 1943 and he was declared unfit for further combat duty. He expected to be discharged, however he was assigned to limited duty and retained in the service. While in the service he returned home on five furloughs for varying periods during each of which his time was occupied in working at the factory in performance of such duties as he had carried on at the time of his entry into the Army. On December 28, 1943 Kohn advised petitioner in writing as follows: "Two years ago when I suggested my retirement it had the effect of making you very much perturbed and upset. I therefore shelved the idea - for the time being. "I've hung on for two years longer - but am still extremely tired and would like to withdraw. Even though, today, I am giving very little assistance to the Business - every effort on my part is a strain and my Doctor feels that were I able to withdraw - that it would prolong my life. Now Charlie - I have hesitated in again taking this up with you - not wishing to leave you alone. I do feel however, that the services which I am rendering to the business *34 are almost 'NIL' and that I am therefore somewhat of a 'Parasite' - taking something for nothing - or as if I were going through a revolving door on your push. You understand - don't you? "May I make Three suggestions and I hope that one of them will meet with your approval. "First - that starting Jan. 1 - 1944 I discontinue sharing in any profits or receiving any salary. That monthly payments which are made to me will cover interest on my investment in The Business - the rate of interest being mutually agreed upon by us each. Bill Hermann to continue taking care of my Personal Taxes - charging same to my capital account. "Second - That I maintain a 10% interest in the yearly outcome with other conditions as described above. "Thirdly - That I maintain a 25% interest with like conditions. "In any case, I assure you, that I will continue to give you my support and advice at any time that you may desire same. I could maintain a desk at the office and come in whenever I feel physically fit and when in town. I could also keep in close touch with you by telephone. "If at any time you find yourself able to, and would care to reduce my capital - you are at liberty to do so. *35 "Please think this over and tell me frankly how you feel about it. "Do not let it upset you. You well know that I have your interest and welfare at heart." Following this there were negotiations between petitioner and Kohn with respect to the manner in which his interest in the business would be liquidated and distributed to him. These negotiations continued until January 5, 1945, when an agreement embodying the following terms was entered into: "AGREEMENT made this 5th day of January, 1945, by and between WALTER A. KOHN, hereinafter called KOHN, and CHARLES W. SPEIDEL, hereinafter called SPEIDEL, "WHEREAS, on the third day of November, 1933, the parties hereto entered into an agreement in writing whereby they formed a partnership under the firm name of 'Charles W. Speidel & Company' to engage in the business of buying and selling drawing materials and all accessories pertaining thereto, and duly registered the name in accordance with the Fictitious Name Act of Pennsylvania; and "WHEREAS, Kohn has determined to withdraw from said partnership and Speidel has agreed to Kohn's withdrawal, "NOW, THEREFORE, IT IS MUTUALLY AGREED, AS FOLLOWS: "1. That the aforesaid partnership *36 is hereby declared dissolved as of December 31, 1943. "2. Notice of the withdrawal of Kohn shall be given "(a) by advertisement in a paper of general circulation in Philadelphia and in the Legal Intelligencer; "(b) by letters of notification mailed to each person, firm or corporation who or which has extended credit to the partnership at any time or times; "(c) by letter of notification mailed to each credit reporting agency; "(d) By filing statement of withdrawal of Kohn with the Secretary of the Commonwealth of Pennsylvania and the Prothonotary of Philadelphia County. "3. The interest of Kohn as of the 31st day of December, 1943, had a value of one hundred twenty-four thousand, one hundred ninety-six dollars and forty cents, and Spediel agrees to purchase Kohn's interest for that sum, payable on the following terms: "(a) After January 1, 1944, Kohn shall be entitled to receive interest at the rate of five per cent per annum on the balance due him. "(b) After January 1, 1944, Kohn shall be entitled to receive the minimum sum of one thousand dollars each month on account of principal or interest. He shall be entitled to a reduction of at least ten thousand dollars each *37 year on account of the principal indebtedness. * * *
"5. Kohn hereby assigns to Speidel all of his right, title and interest in the business of the partnership, and in the moneys in bank, good will, trade-marks, trade names, accounts due or to become due, and in all other assets of any kind whatsoever belonging to the said partnership. "6. Speidel shall have the sole and exclusive right to endorse, or otherwise use, the partnership name, in order to transfer or collect, at his own cost and expense, any checks, notes, drafts or other obligations for the payment of money made payable in the partnership name. "7. Kohn hereby appoints Speidel his true and lawful attorney, but at Speidel's sole cost and expense, to enable Speidel to assume full control of the aforesaid business. "8. Speidel covenants to assume, pay and satisfy, or cause to be paid and satisfied, all debts and other liabilities of the partnership. "IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written." Kohn's participation in the profits of the partnership ceased as of the close of 1943 and after that date he no longer drew a salary from the partnership. *38 Certain payments were made to him, however, and charged as interest upon his capital account not yet distributed to him but being used in the partnership business. Prior to 1944, and prior to the time his two sons entered into military service, there were discussions of and an understanding between petitioner, his two sons, and William Hermann that petitioner's two sons, Carl and Leonard, and William Hermann would become members of the partnership upon the retirement of Kohn. On March 10, 1944 petitioner executed the following memorandum respecting his intentions concerning these matters: "To Whom It May Concern: "On December 28, 1943 a letter was written to me by Mr. Walter A. Kohn, my partner, expressing his desire to retire from the partnership in the business known as Chas. W. Speidel and Company. "If and when this takes place, it is my desire to have my sons interested in the business, as well as Mr. William Hermann, who has so faithfully conducted his financial position in our firm. "Both of my boys are in the Service; one has been declared missing. It is my desire to allocate 15% to each one, if they are available at the time of the final agreement between Mr. Kohn *39 and myself. "If but one of the sons is still obtainable, he is to have 15% and Mr. William Hermann is to have 15% likewise. Therefore, I retain 70% of the interest in the business, until such times that an affable agreement can be made between the partners. "The clause in the partnership agreement between Mr. Kohn and myself which states that the employees will share in the profits of the business at a certain percentage will be carried along in the new agreement. "This is my wish and will and should coincide with the dissolution agreement which probably will take place between Mr. Kohn and myself." Under date of April 9, 1945 petitioner, William Hermann, and Leonard R. Speidel, executed an "Agreement of Partnership", the pertinent portions of which are as follows: "MEMORANDUM OF AGREEMENT made the thirty-first day of December, 1944, in the City of Philadelphia, State of Pennsylvania, among Charles W. Speidel, William Hermann and Leonard R. Speidel, WITNESSETH: "WHEREAS, Charles W. Speidel represents that he and Walter A. Kohn, by agreement dated November 1, 1933, formed a partnership under the firm name of Charles W. Speidel & Company, engaging in the business of buying *40 and selling drawing materials and all accessories pertaining thereto; and duly registered such name in accordance with the provisions of the Fictitious Name Act of Pennsylvania; and "WHEREAS, by agreement, said Walter A. Kohn withdrew as a partner as of December 31, 1943, and said withdrawal has been duly noted on the margins of the books in which the certificates of registration were entered; and "WHEREAS, Charles W. Speidel is presently the sole owner of the business trading under said name, and William Hermann and Leonard R. Speidel desire to purchase interests therein and become partners with Charles W. Speidel in said business, and Charles W. Speidel desires to enter into a partnership with them upon certain terms and conditions as hereinafter set forth, NOW, THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS: "1. That the parties hereto shall, as partners, engage in the business of buying and selling drawing materials and all accessories pertaining thereto for the term of one year from January 1, 1944. [The last figure 4 appears to have been written over the typewritten figure 5] "2. That the firm name shall be Charles W. Speidel & Company, and the parties hereto shall register *41 said name in accordance with the provisions of the Fictitious Name Act of Philadelphia, and the previous registration of Charles W. Speidel & Company shall be cancelled. It is understood and agreed by the parties that the partnership shall be construed by them as a continuation of the original business established under the name of Charles W. Speidel & Company; and that the partnership shall be entitled to all of the assets and be subject to all of the liabilities of said business, and that the terms of the agreement of partnership between Walter A. Kohn and Charles W. Speidel, not inconsistent herewith, shall become the terms of this partnership, particularly Clause 4 thereof, incorporated herein as Clause 7. "3. That the term of the partnership shall begin on January 1, 1944, [The last figure 4 appears to have been written over the typewritten figure 5] and shall continue for a period of one year, unless terminated prior thereto by the death of one of them; but if all survive, it shall continue for further periods of one year, unless three months' written notice be given by one of the partners to the others of his desire to terminate the partnership at the end of the current *42 term. "4. That the business of the partnership shall be conducted at 112 North Twelfth Street, Philadelphia 7, Pennsylvania, and at such other place and places as the parties may select. "5. (a) That the NET [the typewritten word GROSS is marked out and the word NET written above it] assets with which the partnership shall begin business shall consist of all of the present assets of Charles W. Speidel & Company, subject, nevertheless, to the payment and performance of William Hermann and Leonard R. Speidel of terms and conditions hereinafter set forth. "(b) That the NET [the typewritten word GROSS is marked out and the word NET written above it] assets shall belong to the parties hereto in the following proportions: Charles W. Speidel,70% thereof; William Hermann, 15% thereof; Leonard R. Speidel, 15% thereof. "(1) Charles W. Speidel, in consideration of the execution and delivery of a promissory note to his order by William Hermann in the amount of twelve thousand dollars, payable with interest at the rate of three percent per annum, hereby assigns to William Hermann an undivided fifteen percent interest in the gross assets of Charles W. Speidel & Company. "(2) Charles *43 W. Speidel, in consideration of the execution and delivery of a promissory note to his order by Leonard R. Speidel in the amount of twelve thousand dollars, payable with interest at the rate of three percent per annum, hereby assigns to Leonard R. Speidel an undivided fifteen percent interest in the gross assets of Charles W. Speidel & Company. "The above-mentioned notes shall contain provisions that any profits to which William Hermann and Leonard R. Speidel shall be entitled by reason of their interests in the partnership, shall be first used by each of them to reduce the amount of the indebtedness to Charles W. Speidel. It is understood and agreed, however, that the makers of the notes may anticipate them by payment at any time. * * *
"8(b) That the net profits or net loss shall be divided among the partners in accordance with their capital holdings, subject to the provisions of Clause 7 hereof. "9. That the parties shall draw, at the end of each month, salaries as follows: Charles W. Speidel, six hundred dollars; William Hermann, four hundred and fifty dollars. It is understood and agreed that Leonard R. Speidel shall not be entitled to a salary until he may devote all *44 his time and attention to the business of the partnership, and that at such time, the partners shall agree upon the monthly salary to which he shall be entitled. * * *
"16. That the parties intend that this agreement shall be legally binding upon, and inure to the benefit of, the parties and their respective personal representatives. "IN WITNESS WHEREOF, the parties have hereunto set their hands and seals this 9th day of April, 1945." This agreement was signed by Leonard R. Speidel while still in the military service. At about the same time William Hermann and Leonard R. Speidel each executed a demand note date December 31, 1944 and payable to Charles W. Speidel in the amount of $12,000. Salaries aggregating $9,900 were paid petitioner and William Hermann during the year 1944, of which $3,900, or $75 per week, was paid William Hermann, and $6,000, or $500 per month was paid petitioner. These were the same salaries received by them prior to 1944. No salary was paid Leonard R. Speidel subsequent to his entry into military service and prior to January 1, 1946. Capital accounts were set up showing a partnership interest of 15% each in Leonard and William Hermann as of January 1, 1944. At *45 the end of each of the years 1944 and 1945 Leonard R. Speidel's account was credited with the income from a 15% capital interest and these amounts were duly shown by him on his income tax returns filed for those years, the tax thereon being paid through the partnership and charged to his account. There were no withdrawals from these accounts except for the income tax payments during the years 1944 and 1945. Partnership returns were likewise filed by Charles W. Speidel & Company for each of the calendar years 1944 and 1945 showing partnership interests in each of those years of 70% in Charles W. Speidel and 15% each in William Hermann and Leonard R. Speidel. Leonard was discharged from the military service at San Antonio, Texas on November 23, 1945, and returned to his home December 7, 1945 and resumed active participation in the business of the partnership. No valid partnership existed between petitioner and Leonard R. Speidel during the taxable year 1944, or until April 9, 1945. Leonard R. Speidel became and was a bona fide partner in the firm of Charles W. Speidel & Company beginning April 9, 1945, when the partnership agreement between petitioner, William Hermann and Leonard *46 R. Speidel was signed by him. Opinion The sole issue involved in this proceeding is whether petitioner's son, Leonard R. Speidel, was a bona fide partner for Federal income tax purposes in the business conducted under the name of Charles W. Speidel & Company during the years 1944 and 1945. Petitioner contends Leonard became such a partner on January 1, 1944. Respondent contends, however, that such a partnership did not exist prior to January 1, 1946. In support of his contention petitioner points to the fact that respondent, in his answer filed herein, as well as in connection with an income tax proceeding involving William Hermann, as stipulated herein, has admitted that a partnership existed between petitioner and William Hermann during all of the taxable years 1944 and 1945; that both William Hermann and Leonard were employed by the company prior to 1936 at salaries less than ordinarily paid for services of the character performed by them upon assurances by petitioner that they would be taken into the partnership upon the retirement of Walter A. Kohn, petitioner's original partner; that William Hermann and Leonard executed the same agreement of partnership and each executed *47 a demand note in the amount of $12,000 payable to Charles W. Speidel bearing the same date, December 31, 1944, in payment of their respective partnership interests, and that the only difference between the two lay in the fact that Leonard was petitioner's son and was in the military service from 1941 to 1945, whereas William Hermann continued working for the company. While respondent's admission concerning the existence of a partnership between petitioner and William Hermann during all the taxable years 1944 and 1945 has given us much pause, it is not controlling on the question presented in this proceeding. We are not here concerned with, and express no opinion on when William Hermann became a partner in the firm of Charles W. Speidel & Company. Our sole concern is with the status of Leonard R. Speidel in such firm during the taxable years 1944 and 1945. Both parties point to language of the Supreme Court in , in support of their respective contentions. In that case the Supreme Court said: "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard *48 supposedly established by the Tower case [, but whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." It cannot seriously be contended that there was not a bona fide intent and an understanding between petitioner, William Hermann, and Leonard that the latter two would be taken into partnership with petitioner upon the retirement of Kohn. Following the heart attack suffered by Kohn in 1936 Leonard left school and began working full time for the company learning to operate all its machines and acquiring knowledge of all its processes, including secret formulae previously known only to petitioner, preparatory to assuming the responsibilities of a partner in such business. An older son of petitioner, Carl, *49 later prevented from becoming a partner by reason of his death in military service in 1943, who had been taking a course in business management at Drexel Institute, left school in 1937 to assume full time employment with the company in preparation for his becoming a partner. William Hermann, who had previously worked only part time as an assistant to Kohn, was employed on a full time basis. The intent being clear the problem presented is when the intention, insofar as it related to Leonard R. Speidel, was carried out and he became, for income tax purposes, a bona fide partner in the firm. The Supreme Court, in , said: "The intent to provide money, goods, labor, or skill some time in the future cannot meet the demands of §§ 11 and 22 (a) of the Code that he who presently earns the income through his own labor and skill and the utilization of his own capital be taxed therefor. The vagaries of human experience preclude reliance upon even good faith intent as to future conduct as a basis for the present taxation of income." Petitioner's intention to bring his sons and William Hermann into the firm as partners depended largely upon the *50 time when Kohn's participation as a partner would terminate. Kohn seriously considered terminating his partnership in 1941 and both he and petitioner drafted proposed termination agreements. His withdrawal, however, was deferred pending the enlistment of Carl and Leonard Specidel in 1941 in order to perform the one year military service then required of them. The intervention of Pearl Harbor and World War II further delayed his withdrawal. However, on December 28, 1943 he made known to petitioner the necessity, because of his physical condition, for his immediate withdrawal and offered three suggestions for settling his financial interest in the company. Notwithstanding Kohn drew no salary and did not participate in the profits of the company as such after January 1, 1944, it is apparent his membership in the partnership did not terminate until January 5, 1945, when the agreement of that date was entered into between him and petitioner. William Hermann, when asked to explain the payments to Kohn in 1944 and 1945, testified: "A. All during 1944 Mr. Kohn's withdrawal from the partnership was in question. It was not until 1945 that a definite agreement was reached. "During 1944 *51 Mr. Kohn requested that we pay him the five hundred dollars which he had been drawing previously and to charge it to his capital account in the way of interest. "After an accord was reached in January of 1945 we paid Mr. Kohn twelve thousand dollars and we made adjustments for the interest which was due him. "In other words, we owed him so much; we paid him twelve thousand dollars plus the six thousand dollars, which made the eighteen thousand dollars, or fifteen hundred dollars a month. "Q. And that adjustment was made when? "A. In January of 1945." Petitioner's "Memorandum To Whom It May Concern" dated March 10, 1944, while setting forth his desires and intentions concerning one or both of his sons and William Hermann becoming members of the partnership, is, nevertheless, indicative of future events rather than something that had already occurred. It is accordingly clear that no partnership existed between petitioner and his son, Leonard R. Speidel, during the year 1944. The next question then is whether a partnership existed between petitioner and his son, Leonard R. Speidel, during any portion of the year 1945. The "Agreement of Partnership" executed April 9, 1945 stated *52 that such agreement was made the 31st day of December 1944, and further stated that such a partnership began on January 1, 1944. [1] The demand notes executed by William Hermann and Leonard about April 1945 were dated December 31, 1944. Leonard reported and paid income tax on profits received from Charles W. Speidel & Company for each of the years 1944 and 1945, and partnership returns were filed by Charles W. Speidel & Company for each of said years, reporting the division of profits on the basis of 70% to Charles W. Speidel, and 15% each to William Hermann and Leonard R. Speidel. The partnership between petitioner and Kohn did not finally terminate until January 5, 1945 and the existence of the new partnership prior to that date would be inconsistent with the existenance of the old one. Accordingly it is clear that no valid partnership existed between petitioner and Leonard prior to January 5, 1945. Lastly, we have considered whether such a partnership existed from and after January 5, 1945. The *53 final termination of the former partnership with Kohn apparently removed any obstacle to the carrying out of petitioner's intentions to make his son Leonard a partner. We are confronted, however, with the fact that the son was then in the military service. This of itself was not an insurmountable obstacle. As the Supreme Court, in a footnote to its opinion in the Culbertson case, , N. 6, observed: Of course one who has been a bona fide partner does not lose that status when he is called into military or government service * * *. On the other hand, one hardly becomes a partner in the conventional sense merely because he might have done so had he not been called."
See also . Leonard, however, had not "been a bona fide partner" prior to his entry into the service in 1941. Neither had he contributed any funds to the business nor committed himself to do so prior to April 9, 1945, when he executed a demand note predated as of December 31, 1944. We have previously pointed out that for tax purposes the existence of a present partnership may not be inferred from intentions as to future conduct. We think it equally clear, *54 that so far as income tax is concerned, a partnership may not be formed retroactively. See . We have very carefully considered all the facts contained in the record, including the stipulation, the exhibits, and oral testimony. We have also carefully considered each of the authorities cited in the briefs of the respective parties. To attempt to point out the distinctions in each of those cases would unnecessarily lengthen this opinion. It is sufficient to say that we find nothing therein inconsistent with the position herein taken. Considering all the facts and circumstances of the case, we have concluded that, for income tax purposes, no valid partnership existed between petitioner and his son, Leonard R. Speidel, during the year 1944, nor during the year 1945 until April 9, 1945, but that such a partnership did exist on and after April 9, 1945. Accordingly, the Commissioner correctly held that petitioner is liable for income taxes on the profits of Charles W. Speidel & Company assigned to Leonard R. Speidel for the calendar year 1944, and for such portion of the profits of the company which were assigned to Leonard for the year 1945 as the *55 period from and including January 1, 1945 to April 9, 1945 bears to the entire year. Decision will be entered under Rule 50. Footnotes
1. The last figure 4 was written over the typed figure 5, and neither petitioner, William Hermann, nor Leonard, though questioned, could explain by whom or when this change was made.↩